<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————

No. 02-3333

———————

**RECEIVED**

**JAN 2 1 2004**

ARCH PERSONAL CARE PRODUCTS, L.P.  AT 8:30_____M
WILLIAM T. WALSH, CLERK

v.

IVAR W. MALMSTROM, JR.;
BROOKS INDUSTRIES, INC.,
<u>Appellants</u>

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-03148)
District Judge:  Hon. Joel A. Pisano

———————

Submitted Under Third Circuit LAR 34.1(a)
September 5, 2003

Before:  SLOVITER, NYGAARD, and ROTH, <u>Circuit Judges</u>

(Filed December 24, 2003 )

———————

<u>OPINION OF THE COURT</u>

SLOVITER, Circuit Judge.

## I.

Defendants Ivar W. Malmstrom and Brooks Industries, Inc. appeal from the order of the District Court granting the request of plaintiff Arch Personal Care Products, L.P. ("Arch") for a preliminary injunction restricting Malmstrom from, "within the United States, engaging in any activity or business or establishing any new businesses that are substantially in competition with Arch." Malmstrom argues that the District Court abused its discretion because Arch failed to show a likelihood of success on the merits or an actual threat of irreparable harm, and because the preliminary injunction is overbroad, ambiguous, and based on conflicting affidavits. Finally, Malmstrom argues that the District Court lacks subject matter jurisdiction because Arch's Lanham Act claim is frivolous and unsubstantiated. We will affirm.

## II.

The parties are familiar with the facts and we refer to them only as necessary for our discussion. Brooks, a company that manufactured cosmetic ingredients which it then sold to producers of finished cosmetics and personal care products, entered into an "Asset Purchase Agreement" signed by Malmstrom, the former president and a principal shareholder in Brooks and the other shareholder, to transfer to Arch the majority of Brooks' assets, including tangibles (machinery, equipment, etc.), as well as intangibles ("all patents, patent applications, trademarks, applications, service marks, trademark and

2

service mark applications and registrations, copyrights and copyright registrations, . . .

logos, trademarks, product names, trade names, software, computer programs . . . and

goodwill") for $37 million.  A significant percentage of the purchase price went to

Malmstrom himself.  The asset purchase agreement between Arch and Brooks also

included a consultant agreement between Malmstrom and Arch, in which Malmstrom

agreed to work for Arch for $15,000 per month for approximately one year and agreed

not to compete during the duration of the consultancy and for three years beyond that

date.  The purchase and consultant agreements went into effect on November 30, 2000.

Arch had the option to extend the agreement but chose instead to terminate it as of

November 30, 2001.

The non-compete agreement provided:

Consultant shall not, for the term of this Agreement and three (3) years
immediately following the termination hereof, <u>within the United States</u>, engage in
activities or businesses, or establish any new businesses, that are substantially in
competition with the Business ("Competitive Activities"), including:

(1)    selling goods or services of the type sold by the Business,
(2)    soliciting any customer or prospective customer of the Business to
purchase any goods or services sold by the Business from anyone
other than Arch and its affiliates, and
(3)    assisting any person in any way to do, or attempt to do, anything
prohibited by clause (i) or (ii) above; including (x) soliciting,
recruiting or hiring any employees of the Business or persons who
have worked for the Business, (y) soliciting or encouraging any
employee of the Business to leave the employment of the Business
and (z) disclosing or furnishing to anyone any confidential
information relating to the Business or otherwise using such
confidential information for its own benefit or the benefit of any
other person.

3

App. at 287-88 (emphasis added).

Malmstrom sent a memo dated January 29, 2002, from a return address in South Plainfield, New Jersey announcing that he was "at liberty to enter into business in the cosmetics industry outside of the United States," that he was "in the process of establishing new companies to transact business in both Europe and Asia," and that the companies would "concentrate on providing products manufactured locally to the regional markets served by each." App. at 142. Arch demanded that Malmstrom cease and desist all activities in violation of his contractual obligation not to compete with Arch within the United States. In a later letter, Arch requested that Malmstrom sign a statement assigning the Brooks name to Arch, and that he change the name of the remaining company he still owned from "Brooks Industries" to something that would not violate the trademark Arch had purchased.

Malmstrom denied that the non-compete agreement to which he was bound extended beyond his activities within the United States, and stated that his participation at a conference in London did not constitute a violation of the non-compete agreement. He conceded that he was affiliated with Brooks, but asserted that Arch had not bought the corporation itself nor the name.

On June 28, 2002, Arch filed a complaint in the United States District Court for the District of New Jersey against Malmstrom and Brooks Industries seeking a temporary restraining order, preliminary and permanent injunctions, specific performance, and

4

recovery of monetary damages for breach of contract, breach of the duty of good faith

and fair dealing, infringement of trade name and trademark, false designation of origin

and misrepresentation in commerce, unfair competition, misappropriation, and deceptive

trade practices.  Arch alleged that Malmstrom violated the covenant not to compete,

breached representations and warranties made in connection with the sale of Brooks in

November 2000, and made unauthorized use of the Brooks trade name and trademark.

The complaint alleged that Malmstrom's actions constitute unfair competition under

Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a).

In support of Arch's motion for a temporary restraining order, Arch filed the

affidavits of Andrew Banham and Lisa Lods, former Brooks employees who were now

Arch employees, as well as the affidavit of Arch counsel Joseph Boyle which included

the Asset Purchase Agreement between the parties.  Lods' affidavit alleged that

Malmstrom had solicited a former Brooks/Arch distributor to form a European company

(ACON), which she believed was affiliated with Active Concepts, Inc.  The latter is a

company started by another former Brooks/Arch employee that competes with Brooks.

Both Lods and Banham alleged that Active Concepts/ACON distributed products similar

to ones that had been exclusive to Brooks and then to Arch.  Banham's affidavit stated

that a representative from Avon Japan revealed that Malmstrom had attempted to solicit

his business away from Arch to Active Concepts.  Lods' affidavit alleged that

Malmstrom had invited Active Concepts employees and Revlon executives on a boat

5

outing, after which time Revlon "move[d] some of its business to Active Concepts" and away from Arch. And both affidavits stated that Malmstrom attended a New York cosmetics trade show in December 2001 and hosted a hospitality suite which appeared to be for Active Concepts. Malmstrom was also overheard saying that Active Concepts was the "real" or "new" Brooks and that Arch was not Brooks.

The District Court held a hearing on July 1, 2002 on Arch's motion for a temporary restraining order. At that hearing, the District Court noted that Malmstrom had received consideration for the non-compete agreement, and concluded that there was a likelihood of success on the merits of the complaint, that Malmstrom's "conduct, if not restrained, could lead to confusion in the marketplace and could constitute and result in the dilution of the trademark rights of the plaintiff [Arch]," and that Malmstrom would not suffer any irreparable harm because the restraints mirrored the non-compete agreement he had signed. The next day, July 2, 2002, the District Court issued a temporary restraining order prohibiting "Malmstrom from, within the United States, engaging in any activity or business or establishing any new businesses that are substantially in competition with Arch PCP," with any current or former customers or distributors of Brooks or Arch, listing 38 companies, including some foreign-based companies. App. at 6-12. Finally, the District Court found that the restraints were entered in the public interest, "which is consistent with the enforcement of the terms of contracts freely entered by people in a particular field of business." App. at 364. The

6

Court also entered an order to show cause for a preliminary injunction at a hearing set for July 15, 2002.

Malmstrom filed a subsequent affidavit dated July 11, 2002, in which he admitted he was an owner of ACON, wrote and mailed the January 2002 letter within the United States, and hosted Arch's competitors and customers on his boat, but disagreed that this conduct violated the non-compete agreement. Malmstrom also denied that Arch had purchased the rights to the Brooks corporate name in the November 2000 Asset Purchase Agreement.

At the preliminary injunction hearing on July 15, the court rejected Malmstrom's argument that the restraints extend beyond the parameters of the non-compete agreement, stating that Arch and Malmstrom, in negotiating the non-compete agreement, both understood the terms to which they were agreeing, and reiterated that Malmstrom had received consideration, in the form of monetary compensation, for his agreement not to compete. The court agreed with Arch that the prohibition on competition "within the United States" applied to Malmstrom himself and that Malmstrom's location at the time of the conduct determines whether it constitutes impermissible competition. On July 22, 2002, the District Court issued a preliminary injunction which adopted the temporary restraints ordered on July 2, 2002.

Malmstrom filed this timely appeal. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 based on the allegation of violation of the Lanham Act, 15 U.S.C. §

7

1051. Jurisdiction is determined on the basis of the complaint, and the defendants'
denial of the facts did not deprive the District Court of its jurisdiction. The District
Court determined that the claims, including those based on violation of federal law, were
not frivolous or lacking merit. Therefore, we need not rely on Arch's motion to amend
the complaint to add a claim of violation of the Computer Fraud and Abuse Act, 18
U.S.C. §§ 1030 et seq. This court has jurisdiction over the appeal under 28 U.S.C. §
1292(a)(1).

### III.

We review an order granting a preliminary injunction for abuse of discretion, its
factual findings for clear error, and its determinations of questions of law de novo.
Nutrasweet Co. v. Vit-Mar Enterprises, 176 F.3d 151, 153 (3d Cir. 1999). This Court
has held that a district court may permissibly grant the "extraordinary remedy" of a
preliminary injunction only if "(1) the plaintiff is likely to succeed on the merits; (2)
denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not
result in irreparable harm to the defendant; and (4) granting the injunction is in the public
interest." Id. at 153 (quoting Maldonado v. Houstoun, 157 F.3d 179, 184 (3d Cir.
1998)). The burden lies with the plaintiff to establish any element in its favor, or the
grant of a preliminary injunction is inappropriate. See id.

The District Court, in reviewing the affidavits presented by Arch, determined that
there was a "likelihood of success on the merits." The Court considered that

8

Malmstrom's affidavit confirmed that he had indeed been working with ACON and that he had sent out the letter announcing his re-entry into the cosmetics industry from New Jersey ("within the United States"). The Court concluded that irreparable harm could result to Arch if the restraints were not put into place because Malmstrom's behavior "could lead to confusion in the marketplace and could . . . result in the dilution of [Arch's] trademark rights." App. at 363. The District Court also considered the fact that Malmstrom received a significant amount of money for his agreement not to compete, and found that because the restraints paralleled those in the agreement Malmstrom had negotiated with Arch, he would not suffer any permanent harm as a result of the restraints. The Court further concluded that the restraints were within the public's interest in the enforcement of contracts according to the terms included by the parties. The District Court adequately discussed each of these four elements that we held in Nutrasweet should be considered.

Malmstrom argues on appeal that the District Court's preliminary injunction was overbroad and ambiguous, thus rendering it unenforceable as a matter of law. This is related to his claim that the restraints imposed by the District Court are unconscionable and prevent him from making a living, contrary to an express term of the contract between the parties. Covenants not to compete are enforceable if they are limited in geographical scope and duration. While non-compete agreements that accompany employment contracts are subject to a reasonableness test, *see* Solari Industries v.

9

Malady, 264 A.2d 53 (N.J. 1970), New Jersey courts afford more deference to restrictive covenants ancillary to the sale of a business because the participants in the sale of a business have more equal bargaining power. Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc., 834 F. Supp. 683, 691 (D.N.J. 1993). The courts seek to protect the "good will" established by the seller and transferred to the buyer. Id. Good will includes intangibles like company reputation and customer relationships.

Although the length of the restriction in this case was the same as in Jiffy Lube, the geographic limitations are far more extensive than in that case, and the circumstances different. Malmstrom and Arch were positioned in more equal bargaining roles at the time of the sale of the Brooks assets to Arch than were the individual franchise owner and international Jiffy Lube corporation in Jiffy Lube. Malmstrom himself had developed Brooks' business and, despite the three-year restriction on competitive activities, he will be able to resume much of the same types of activities once the non-compete period ends in November 2004. Unlike the franchise owner in Jiffy Lube, Malmstrom would not lose his livelihood as a result of enforcing the non-compete agreement. The District Court based its decision to enforce Malmstrom's agreement not to compete on the fact that he received a great deal of money for the sale of his business. Arch had paid a substantial sum for tangible assets, but also for the good will that Malmstrom had created at Brooks. Allowing him to compete against Arch would destroy the value of the intangible assets purchased by Arch.

10

Malmstrom argues that the District Court's interpretation of the non-compete agreement extends beyond what the parties agreed upon during their original negotiations at the time of the sale of Brooks to Arch.   The District Court rejected that argument, stating "what is restrained is Mr. Malmstrom's conduct within the United States," such as his "conduct in the United States which may have something to do or be relevant in connection with the dealing with a foreign country, a foreign company." App. at 429.  The District Court agreed with Arch that the limitations apply to the location from which Malmstrom himself performs any activity, not the location where the competitive activity has its impact.   Although the District Court's order includes international businesses in addition to U.S.-based businesses with which Malmstrom is prohibited from competing, the order mirrors the language of the original agreement not to compete by restricting Malmstrom from doing business with these companies while he is "within the United States."  The District Court's role in ruling on the motion for a preliminary injunction was to balance Malmstrom's needs against the rights purchased by Arch seeking to enforce the restrictions.  The court's statements at the July 15, 2002 hearing support this interpretation of the restrictions.  We cannot conclude that the District Court abused its discretion in enforcing the non-compete agreement as it was written, nor that the District Court's interpretation was outside the scope of the original agreement.

11

## IV.

For the reasons set forth, we will affirm the order of the District Court granting a preliminary injunction.

---

TO THE CLERK:

   Please file the foregoing opinion.


   /s/ Dolores K. Sloviter
   Circuit Judge